IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TIMOTHY R. RUMPF,

                              Plaintiff,                      OPINION AND ORDER

     v.

                                                              17-cv-290-wmc

QUORUM FEDERAL CREDIT UNION and
CASE LAW FIRM, S.C.,

                              Defendants.

Plaintiff Timothy R. Rumpf asserts claims against defendants Quorum Federal Credit Union and its law firm Case Law Firm, S.C., for violations of the Wisconsin Consumer Act, Wis. Stat. § 427.104, and civil theft under Wis. Stat. § 895.446, and against defendant Case for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), all based on defendants' actions in a state court debt collection and garnishment action against Rumpf.  Before the court is defendant Quorum's motion to dismiss, asserting several bases including jurisdictional challenges (dkt. #36), and defendant Case's motion for summary judgment (dkt. #20), largely asserting the same bases for judgment in its favor and relying on the same state court records as Quorum's motion to dismiss.  The court will take up these two motions together, cognizant of the different standards applied to each.  For the reasons that follow, the court will deny both motions, albeit noting some limitations to plaintiffs' claims going forward.[1]

---

[1] Also before the court is defendant Quorum's motion to stay all proceedings pending a decision in a Wisconsin Supreme Court case, *Sec. Fin. v. Kirsch*, 2018 WI App 35, ¶ 1, 382 Wis. 2d 271, 915 N.W.2d 730, *cert. granted*, 2018 WI 100, ¶ 1 (Sept. 4, 2018), which could impact one of plaintiff's theories for relief under the Wisconsin Consumer Act.  (Dkt. #55.)   For the reasons explained below, the court will also deny that motion.

Plaintiff Rumpf applied for and received a credit card from Quorum, which not only required that he repay in full all credit extended eventually, but also required him by contract to make minimum, monthly installment payments toward any amounts charged and required him to pay a finance charge on the outstanding balance. Rumpf alleges in his complaint, and avers in a declaration submitted in opposition to defendant Cases' motion for summary judgment, that he "used the money obtained from Quorum [under this contract] for his own personal and household purposes."[3] (Compl. (dkt. #1) ¶ 2; *see also* Rumpf. Aff. (dkt. #44) ¶ 3.)

In March 2012, Quorum determined that Rumpf was in default under the terms of their contract. On March 27, 2012, therefore, Quorum served a notice of default, providing Rumpf 12 days to make the payments due. Rumpf did not comply.

On December 3, 2012, Quorum filed a lawsuit against Rumpf in Dane County, Wisconsin, claiming it was then owed $20,954.89. *Quorum Fed. Credit Union v. Rumpf*, No. 12CV004714 (Wis. Cir. Ct. Dane Cnty. Dec. 3, 2012). Quorum alleged that Rumpf had defaulted on this line of credit and could no longer cure that default. Rumpf answered the complaint. Among other things, he asserted as a defense that Quorum failed to provide a

---

[2] In evaluating Quorum's motion to dismiss, the court accepts all well-pleaded factual allegations as true. *See Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016). In addition, the court may "take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In reviewing Case's motion for summary judgment, the court construes the facts in favor of plaintiff, as the non-movant, and draws all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[3] Defendants would dispute this representation on the basis that the credit card records reveal that it was used to cover gambling transactions. That dispute is addressed in this opinion.

legally-sufficient notice of right to cure default. Specifically, Rumpf argued the "notice of default" that Quorum served on Rumpf provided less than 15 days to cure, rendering it deficient under the Wisconsin Consumer Act. Rumpf's argument failed in Dane County Circuit Court, resulting in the entry of judgment in favor of Quorum. Rumpf then filed a notice of appeal on January 23, 2015.

While this appeal was pending, Quorum filed garnishment notices on Rumpf on February 2, 2015, and December 16, 2015. Unsuccessful in opposing garnishment, Quorum successfully garnished approximately $6,000 from Rumpf's earnings as a result. On May 24, 2016, however, the Wisconsin Court of Appeals issued an opinion reversing the circuit court's grant of judgment in Quorum's favor and remanding for further proceedings. *See Quorum Fed. Credit Union v. Rumpf*, No. 2015AP201, 2016 WL 8606258 (Wis. Ct. App. May 24, 2016) (unpublished). In its decision, the court of appeals agreed that Quorum's first notice was deficient because it did not provide at least 15 days to cure the default, and that a second notice was ineffective because it was not provided before Quorum filed suit. *Id.* at *2. On remand from that decision, Quorum requested that the Dane County Circuit Court dismiss its action against Rumpf.

Rumpf filed his complaint in this court on April 18, 2017, alleging that "Quorum and its counsel have received and refused to return the sum of $8,928.37 in funds garnished from Mr. Rumpf's paycheck." (Compl. (dkt. #1) ¶ 20.) During oral argument in Dane County Circuit Court on Quorum's motion to dismiss held on the same day that Rumpf filed his federal action, however, that court ordered return of the garnished funds to Rumpf *and* awarded him attorney's fees and costs. Consistent with that oral ruling, the

state court entered a written order on May 9, 2017, requiring Quorum to return the garnished funds in the amount of $6,931.03 to Rumpf, awarding him attorney's fees in the total amount of $15,500.00, and closing that case. (*See* Decl. of Lisa M. Lawless, Ex. 1 (dkt. #46-1).)

Plaintiff has since conceded in his opposition brief to Quorum's motion to dismiss this case, and again in responding to Case's proposed findings of facts in support of its motion for summary judgment, that defendants paid both amounts on June 6, 2017. Still, plaintiff points out that this was almost two months after the state court had orally ordered Quorum to return the garnished funds, and about a year after Quorum sought dismissal of its underlying state lawsuit in response to the Wisconsin Court of Appeals decision reversing entry of judgment in defendants' favor. (Pl.'s Opp'n to Quorum's Mot. (dkt. #39) 20.)


OPINION

## I. Motion to Dismiss and Motion for Summary Judgment

In this lawsuit, plaintiff asserts claims against both defendants for two violations of the Wisconsin Consumer Act. First, plaintiff alleges that defendants' disclosure in a brief filed in the Wisconsin Court of Appeals that

> a review of the billing statements submitted with the plaintiff's brief . . . shows that the vast majority of the charges were for gambling," violated Wis. Stat. § 427.104(1)(e), which prohibits "[d]isclos[ing] or threaten[ing] to disclose to a person other than the customer or the customer's spouse information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the

information.

(Compl. (dkt. #1) ¶ 31a.)  Second, plaintiff alleges that defendant violated Wis. Stat. §

427.104(1)(j), which prohibits "[c]laim[ing], or attempt[ing] or threaten[ing] to enforce a

right with knowledge or reason to know that the right does not exist," by "filing their legal

action, seeking a judgment, filing two garnishments, defending those garnishments,

garnishing Rumpf's paychecks, and then refusing to return the garnished funds."  (*Id.* at ¶

31b.)  Rumpf also alleges a civil theft claimed pursuant to Wis. Stat. § 895.446, on the

basis that "[b]oth defendants . . . intentionally retained possession of the garnished funds

without Rumpf's consent."  (*Id.* at ¶ 34.)  Finally, as to defendant Case, Rumpf alleges

FDCPA claims based on the same factual allegations underlying his state law claims.  (*Id.*

at ¶¶ 25-28.)  Defendant Quorum moves to dismiss and defendant Case seeks summary

judgment on all of the claims asserted against them, for largely duplicative reasons. The

court addresses each argument below.

### A.  Jurisdictional Challenges

Quorum's first argument warrants little discussion.  Indeed, Quorum appears to

concede as much in its reply brief.  Quorum originally contended that the court lacks

jurisdiction over any state law claims because plaintiff failed to plead sufficient facts to find

the amount in controversy exceeded $75,000.  Certainly, this argument would warrant

scrutiny if the state law claims were the only ones asserted in this case.  However, plaintiff

asserts a *federal* claim against defendant Case premised on the same allegations that

underlay the state law claims, providing federal question jurisdiction under which the court

has ample supplemental jurisdiction to consider the state law claims.  *See* 28 U.S.C. §

1367(a) (providing that district could "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they face the same case or controversy under Article III).[4]

Both defendants also argue that the court is barred from exercising jurisdiction over plaintiff's state law claims by the *Rooker-Feldman* doctrine.[5]  This doctrine generally applies to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), in recognition that "no matter how erroneous or unconstitutional the state court judgment may be, only the Supreme Court of the United States has jurisdiction to review it." *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012).

Defendants focus on the fact that this case involves actions taken in a state court proceeding, but fail to appreciate why the doctrine is not applicable in this case:  plaintiff is not seeking relief inconsistent with a state court judgment.  On the contrary, there is no adverse state court judgment at all, having already been vacated by the Wisconsin Court of Appeals.  Indeed, Rumpf did exactly what the *Rooker-Feldman* doctrine requires if a state court enters a judgment against him; he appealed that decision through the state system,

---

[4] If the court were to grant judgment in defendant Case's favor on Quorum's federal claim, then the typical practice in this circuit would be to dismiss the remaining state law claims without prejudice.  *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).  For the reasons explained in this opinion, however, the court denies Case's motion for summary judgment on the FDCPA claim and, therefore, will continue to exercise supplemental jurisdiction over the state law claims as well.

[5] *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

rather than filing a federal lawsuit challenging that judgment. Accordingly, the *Rooker-Feldman* doctrine has no application in this case.

## B. Preclusion

Defendant Quorum next argues -- as does defendant Case in its reply brief -- that even if the claims are not barred by *Rooker-Feldman*, the court should find claim or issue preclusion. Under the Wisconsin common law doctrine of claim preclusion, "a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings." *Menard, Inc. v. Liteway Lighting Prods.*, 2005 WI 98, ¶ 26, 282 Wis. 2d 582, 698 N.W.2d 738 (emphasis added). Wisconsin law requires the following essential elements for claim preclusion to apply: (1) an "identity between the parties or their privies in the prior and present suits"; (2) that the "prior litigation resulted in a final judgment on the merits by a court with jurisdiction"; and (3) an "identity of the causes of action in the two suits." *Sopha v. Owens-Corning Fiberglass Corp.*, 230 Wis. 2d 212, 601 N.W.2d 627, 637 (1999). Similarly, issue preclusion under Wisconsin law applies where an issue was actually litigated and decided by a previous court. *See Mrozek v. Intra Fin. Corp.*, 2005 WI 73, ¶ 17, 281 Wis. 2d 448, 699 N.W.2d 54.

To the extent that plaintiff were still seeking to challenge the amount of garnishment funds or attorney's fees awarded by the state circuit court action, the court agrees that those claims are now precluded. Moreover, in its reply brief, Quorum appears to acknowledge that its preclusion argument only applies to any claim for "the return of the garnished monies and the attorneys' fees incurred in the State Court Action."

(Quorum's Reply (dkt. #45) 9.)  However, in this lawsuit, plaintiff is pursuing different claims and damages from the relief sought and obtained in state court -- namely, damages for emotional distress for violations of the WCA and an award of statutory damages of triple the amount of the withheld garnished funds for violation of the civil theft statute.

Still, the claim preclusion doctrine also generally bars relitigating claims that *could* have been raised in the prior action.  *See Menard, Inc.*, 2005 WI 98, at ¶ 27 ("Claim preclusion, in addition to precluding a plaintiff in a subsequent action from asserting claims that were litigated or could have been litigated in a prior action, may operate to preclude a plaintiff from asserting claims in a subsequent action that the party failed to assert in a previous action in which it was a defendant.").  As the Wisconsin Supreme Court explained, however, "[c]laim preclusion, standing alone, is not a bar to a subsequent suit by a defendant [in the first action] who chooses not to counterclaim in the first action. Were this not so, claim preclusion would improperly operate as a compulsory counterclaim rule."  *Wickenhauser v. Lehtinen*, 2007 WI 82, ¶ 23, 302 Wis. 2d 41, 58–59, 734 N.W.2d 855, 864.

As is too often the case, and as suggested by the language quoted from *Menard* above, there is also an exception to that exception.  Specifically, there is an exception to the permissive counterclaim exception to the general claim preclusion doctrine, because Wisconsin has adopted a narrow, common-law compulsory counterclaim rule that is set out in the Restatement (Second) of Judgments § 22(2)(b) (1982), barring "a subsequent action by a party who was a defendant in a previous suit if a favorable judgment in the second action would nullify the judgment in the original action or impair rights established

8

in the initial action.'" *Id.* at ¶ 25 (quoting *Menard*, 2005 WI 98, at ¶ 28 (internal quotations omitted)).

The preclusion discussion finally ends there, however, since that narrow exception-to-the-exception does not apply here for the same reasons as plaintiff's claims are not barred under the *Rooker-Feldman* doctrine: plaintiff is *not* attempting to challenge the judgment entered in the first action or otherwise impair any rights of defendants established in that initial action. Instead, the claims at issue here concern different legal questions and seek distinct damages, meaning plaintiff was free to choose to raise those claims in a new lawsuit in this federal forum.

## C. Merits Challenges

This then brings us to defendants' challenges to the merits of plaintiff's claims. First, Quorum asserts various grounds to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that even if accepted as true, plaintiff's factual allegations fail to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *McCauley v. City of Chi.*, 651 F.3d 611, 615 (7th Cir. 2011). In contrast, it is not enough to "plead facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678.

Second, Case alternatively seeks summary judgment on these same claims, arguing that plaintiff's claims are either barred as a matter of law or plaintiff has failed to proffer

evidence sufficient to create a genuine issue of material fact in support of a claim or in opposition to an affirmative defense. For this motion, summary judgment is appropriate where there are "no genuine dispute[s] as to any material fact[s] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). With those two standards of proof in mind, the court will turn to defendants' varied challenges on the merits of plaintiff's claims.

### 1. Bona Fide Error Defense to FDCPA Claim

Defendant Case seeks summary judgment in its favor on the FDCPA claim based on its bona fide error defense. Title 15 U.S.C. § 1692k(c) provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

In sole support of this defense, defendant Case argues that it "set forth good faith arguments that the plaintiff had reasonable notice of the default and right to cure before the action was commenced," directing the court to two of its briefs submitted in the state court action. (Case's PFOFs (dkt. #9) ¶ 9 (citing Fetherston Aff., Exs. E, F (dkt. ##23-5, 23-6)).)

In response, plaintiff argues, and directs the court to caselaw in support, that

defendant's mistake was one of law, not fact, believing erroneously that a 12-day right to cure period was a sufficient period of time to satisfy its legal obligations under the FDCPA, and the bona fide error defense does not apply to a mistake of law. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583 (2010) (holding that bona fide error defense under FDCPA does not apply to mistakes of law).

Even if this framing of the mistake is not accurate -- and the mistake at issue is one of fact, rather than law -- plaintiff also correctly points out that as an affirmative defense, defendant bears the burden of proof that its violation "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Here, plaintiff argues, defendant Case failed to put forth any evidence of its maintenance of such procedures, much less that they were reasonably adapted to avoid bona fide errors. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (explaining that a party seeking summary judgment on claims for which it bears the burden of proof "must lay out the elements of the claim, cite the facts [that] it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim").

Tellingly, defendant Case fails to reply to either of these arguments, instead arguing that to hold it "liable under the circumstances of this [c]ase violates an attorney's obligation to zealously represent his client as held by the Wisconsin Supreme Court and as set forth in Chapter 20 of the Wisconsin Supreme Court Rules." (Case's Reply (dkt. #48) 9.) This is at most a vapid argument, since no lawyer has an ethical obligation to pursue claims that lack a reasonable basis in law or fact. On the contrary, Wisconsin

Statute § 802.05(2)(b) provides in pertinent part:

> By presenting to the court, whether by signing, filing, submitting, or later advocating a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> . . .
> (b) The claims, defenses, and other legal contentions stated in the paper are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Regardless, having failed to meet its burden of putting forth facts that satisfies the bona fide error defense and explaining "why the record is so one-sided as to rule out the prospect of a finding in favor of" plaintiff, the court will deny this portion of defendant Case's motion for summary judgment. *Hotel 71 Mezz Lender LLC*, 778 F.3d at 601.

### 2. WCA Claim Based on Gambling Statement

As described above, plaintiff also alleges a violation of the WCA based on defendants' disclosure of information affecting Rumpf's reputation -- namely, by disclosing in their appellate brief in the court of appeals that his subject debt was incurred while gambling. Quorum seeks dismissal of this claim and Case seeks judgment in its favor on the basis that plaintiff's claim is barred by the so-called litigation privilege. *See, e.g.*, *Ladd v. Uecker*, 2010 WI App 28, ¶ 15, 323 Wis. 2d 798, 808, 780 N.W.2d 216, 220–21 ("[E]ven if untrue, statements made in judicial proceedings are absolutely privileged.") (citing *Lathan v. Journal Co.*, 30 Wis.2d 146, 151, 140 N.W.2d 417 (1966)). The privilege only applies, however, to statements that are "pertinent or relevant to the case." *Ladd*, 2010 WI App 28, at ¶ 13 (citing *Bergman v. Hupy*, 64 Wis. 2d 747, 750, 221 N.W.2d 898

(1974)).

In the appellate brief concerning whether Rumpf had a right to attorney's fees, defendants stated, "a review of the billing statements submitted with the plaintiff's brief and appendix to the Court of Appeals, shows that the vast majority of the charges were for gambling, which is clearly not a personal, family, household or agricultural purpose." (Quorum's Reply (dkt. #45) 11 (quoting Fetherston Aff., Ex. L (dkt. #23-12) 4).) Defendants argue that the issue of whether the credit card charges were incurred for a personal, family or household purpose was relevant to whether the transaction fell within the WCA and, therefore, whether plaintiff had a right to attorney's fees in the underlying state action. *See* Wis. Stat. § 421.301(17) (defining "customer" as "a person . . . who seeks or acquires real or personal property, services, money or credit for *personal, family or household* purposes" (emphasis added)).[6]

In response, plaintiff argues that information regarding the source of plaintiff's debt was not relevant or pertinent because defendants did not dispute that Rumpf was a consumer under the WCA in the circuit court action. (Pl.'s Opp'n to Mot. to Dismiss (dkt. #39) 9 (citing *Quorum Fed. Credit Union v. Rumpf*, 2016 WL 8606258, at *3 ("It was Quorum who sought summary judgment and never disputed in its summary judgment materials that Rumpf was a consumer.")).) Whether defendants failed to raise timely this issue in the circuit court, however, does not by itself preclude its *possible* relevance or

---

[6] For further context, the WCA applies to "consumer transactions" or "consumer credit transactions." Wis. Stat. § 421.201(1). A consumer transaction is "a transaction in which one or more of the parties is a *customer* for purposes of the transaction." Wis. Stat. § 421.310(13) (emphasis added).

pertinence to the question of whether Rumpf had a right to attorney's fees under the WCA, even if the Court of Appeals ultimately rejected defendants' argument.

There still remains a question as to whether the fact that the debt was incurred from gambling is material to its characterization as "personal" debt, a requirement for the WCA to apply in the first instance. Without providing any reasoning or support, defendant Case presumes that gambling debts are not "personal" debts; and defendant Quorum directs the court to some FDCPA cases where courts simply questioned whether a gambling debt is a "debt" within the meaning of the FDCPA but stopped short of deciding that issue. (*See* Quorum's Reply (dkt. #45) 13-14.)[7] At bottom, neither defendants direct the court to any case holding that gambling debts are not personal in nature within the meaning of the WCA, nor can the court discern why a gambling debt owed by Rumpf individually would not be "personal" in nature under any legal or commonsense meaning. Indeed, from the court's review of WCA and FDCPA cases, it seems as if the relevant distinction is between whether a debt is personal as opposed to business-related or commercial. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols,* & *Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (explaining reason behind FDCPA is to protect unsophisticated borrowers, thus limited to debts incurred for personal, rather than business reasons); *Burton v. Kohn Law Firm S.C.*, No. 16-CV-594, 2018 WL 1785495, at *3 (E.D. Wis. Apr. 13, 2018) (explaining that relevant inquiry is whether debt incurred was business-related or commercial under both

---

[7] The FDCPA similarly covers "debt" defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for *personal, family, or household* purposes." 15 U.S.C. § 1692a(5) (emphasis added).

14

the WCA and FDCPA); *Parent v. CitiBank (S. Dakota) N.A.*, No. 09-C-951, 2010 WL 2425943, at *3 (E.D. Wis. June 11, 2010) ("The parties' central dispute is whether the transaction at issue was a consumer transaction (i.e., one for 'personal, family or household purposes') or a business transaction."); *cf. Harris N.A. v. Hershey*, 711 F.3d 794, 800 (7th Cir. 2013) (holding that a loan extended to a family investment company was not for personal, family or household purposes under Illinois state law).

Perhaps defendants assume that gambling can be business-related or commercial where its apparent goal is to grow money, rather than cover personal expenses or provide entertainment, but this conclusion is far from clear-cut. As explained by a decision from the Northern District of Illinois (the only decision this court could find that considered the issue):

> Wexler's second argument is that the purpose of gambling is to make money, so gambling is a business, not personal, activity. This argument has some appeal, although probably not as a *per se* rule. Everyone knows that the odds favor the house, so gambling for a living (if one plays by the rules) is not a rational activity. This is not to say that professional gamblers do not exist, but nothing in the complaint suggests that Rogers is one of them.

*Rogers v. Wexler*, No. 01 C 1943, 2002 WL 484894, at *3 (N.D. Ill. Mar. 28, 2002). Nor does the complaint or the record on summary judgment suggest that Rumpf is a professional gambler either.

At the pleading stage, drawing all inferences in plaintiff's favor, the court concludes that plaintiff has plausibly alleged that the gambling debt disclosure was not relevant or pertinent, and therefore not subject to the litigation privilege. As for defendant Case's motion for summary judgment, Case has failed to demonstrate as a matter of law that the

gambling transactions on Rumpf's credit card with Quorum were not personal expenses. Accordingly, Case has failed to meet its burden of demonstrating that this information was pertinent or relevant to the state court appeal and, in turn, that the litigation privilege applies.[8]

### 3. WCA Claim Based on State Court Actions

Plaintiff's WCA claim covers a lot of ground, including the filing of the original state court action itself. In turn, defendants raise a number of bases to dismiss this claim as against defendant Quorum or grant judgment in defendant Case's favor. *First*, defendants argue that there is no cognizable claim under the WCA based on a party filing a lawsuit without proper notice of right to cure; rather, the consequence of such an action is dismissal of the claim itself, which is, in effect, what ultimately occurred here in the underlying state court action. The court recently considered this same argument in a slightly different context. For the same reasons articulated in that opinion, the court rejects defendants' argument here, finding that the failure to serve a proper notice of right to cure before filing of suit does give rise to a right of action under the WCA. *See Lomastro v. Baxter Credit Union*, No. 17-CV-962-WMC, 2018 WL 5885536, at *4 (W.D. Wis. Nov. 9, 2018) (discussing *Satran v. LVNV Funding*, LLC, No. 17-CV-896-JDP, 2018 WL 2464486, at *5

---

[8] This ruling will not preclude the parties from addressing this issue further in a motion in limine or other pretrial filing, preferably on a more fulsome legal and factual record.

(W.D. Wis. June 1, 2018)).[9]

Next, defendant Quorum argues that any theory based on defendants' filing of the state court action is barred by the applicable statute of limitations. In particular, Wisconsin Statute § 425.307(1) provides in pertinent part:

> Any action brought by a customer to enforce rights pursuant to chs. 421 to 427 shall be commenced within one year after the date of the last violation of chs. 421 to 427, 2 years after consummation of the agreement or one year after last payment, whichever is later, except with respect to transactions pursuant to open-end credit plans which shall be commenced within 2 years after the date of the last violation.

While Quorum is correct to point out in its reply that plaintiff failed to respond to this argument in his opposition brief, the plain language of the statute undermines application of this defense. Plaintiff's second cause of action under the WCA alleges violations extending from the date of filing of the underlying state court action through defendants' failure, at least initially, to return the garnished funds. There appears to be no dispute that the refusal to return the funds, continued up until and, indeed, after plaintiff filed the present lawsuit. As such, the date of the last violation occurred within two years of plaintiff's filing of the present lawsuit.

Defendants also challenge any claim premised on execution of the state court judgment during the time before it was vacated by the Court of Appeals. However,

---

[9] The court recognizes that this holding conflicts with the Court of Appeals' decision in *Kirsch*. *Sec. Fin. v. Kirsch*, 2018 WI App 35, ¶ 1, 382 Wis. 2d 271, 915 N.W.2d 730. Given that the *Kirsch* court relied on an earlier opinion of this court, *Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 969 (W.D. Wis. 2013), which for the reasons explained in *Satran*, should be read narrowly, the court is not inclined to give much, if any, weight to the *Kirsch* opinion. Of course, the Wisconsin Supreme Court will have the final say, having accepted review of the Court of Appeals' decision, 2018 WI 100, ¶ 1 (Sept. 4, 2018).

plaintiff's claim is premised on a theory that defendants knew or had reason to know that they had no basis to file the lawsuit in the first instance, having failed to serve an adequate notice of right to cure default. As such, the fact that the circuit court subsequently entered a judgment in Rumpf's favor offers no safe harbor. *See Kett v. Cmty. Credit Plan, Inc.*, 228 Wis. 2d 1, 25-26, 596 N.W.2d 786, 797-98 (1999) (explaining that defendant's failure to pursue the default judgment in the proper venue, coupled with plaintiff's allegation that it knew that it had no grounds for venue, opened defendant up to liability for other provisions of the WCA).

### 4. Civil Theft

Finally, plaintiff is pursuing a claim for civil theft based on defendants' failure to return, at least timely, plaintiff's garnished amounts. A claim for civil theft arises under Wisconsin Statute §§ 943.20 and 895.446. To prove its claim, plaintiff must demonstrate that Quorum:

> [i]ntentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property.

Wis. Stat. § 943.20. Wisconsin statutes afford a civil right of action to recover damages from anyone who has committed "criminal theft." Wis. Stat. § 895.446. Criminal theft requires both a prohibited act and specific intent to convert the property or to deceive or deprive the rightful owner. Wis. Stat. § 943.20

Here, defendants reiterate a number of arguments made in challenging the WCA claim. Namely, defendants argue that there was no theft because the funds were garnished

after entry of judgment in defendants' favor. For the same reasons explained above, to prevail on this claim, plaintiff will need to demonstrate that defendants knew or had reason to know they had no right to the funds at the time they garnished the funds by, for example, demonstrating that they had no right to file the lawsuit given the deficiency in the notice of right to cure.

## II.   Motion to Stay

As discussed above, the Wisconsin Court of Appeals held in *Kirsch* that there was no right to sue for damages under Wis. Stat. § 425.105(1) for a creditor's failure to provide the required notice of right to cure default; instead, the sole remedy was dismissal of the creditor's action. 2017 AP 1408 at ¶¶ 12-13. The Wisconsin Supreme Court granted review on September 4, 2018, and defendant Quorum seeks a stay of this case pending that decision. (Dkt. #55.) Defendant Case does not oppose the motion (dkt. #59), but plaintiff does (dkt. #58).

In considering whether to grant a stay, the court is to consider: "(1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court." *Hy Cite Corp. v. Regal Ware, Inc.*, No. 10-cv-168-WMC, 2010 WL 2079866, at *1 (W.D. Wis. May 19, 2010). These factors weigh in favor of denying the stay.

*First*, this case is not at an early stage, with the summary judgment deadline having passed, and the trial set for January 2019. As plaintiff explains, the earliest date for oral

argument in *Kirsch* would be January 16, 2019, with the opinion likely published sometime between April and June 2019.[10]  If the court were to grant the stay, therefore, the trial in this action would likely be postponed at least six months, if not more.

*Second*, plaintiff claims that it would be prejudiced by a stay given that defendant Quorum, at least to date, has failed to engage in discovery or otherwise develop facts either in support of its affirmative defenses or to dispute plaintiff's claims.  Granting a stay, plaintiff argues, would provide defendant Quorum with an unwarranted opportunity to fill those gaps.  The court finds this argument far less persuasive, particularly since the court could opt not to re-open discovery after lifting a stay.  Still, the court is sympathetic to moving this case to a final resolution in light of plaintiff's rights to have his claims adjudicated in a timely fashion.

*Third*, while the Wisconsin Supreme Court's decision could certainly impact Rumpf's WCA claim based on defendants' failure to provide an adequate notice of right to cure, Rumpf is also pursuing a WCA claim based on defendants' statements about his gambling and a civil theft claim concerning defendants' failure to return timely his garnished wages.  More importantly, even if the Wisconsin Supreme Court were to affirm the Court of Appeals in *Kirsch* and hold that there is no right to damages for a defective notice under the WCA, Rumpf could still pursue his claim under the FDCPA against defendant Case.  *See Boerner v. LVNV Funding LLC*, 326 F. Supp. 3d 665. 680 (E.D. Wis. 2018) ("[T]he ruling on remedies under the WCA is of no consequence for purposes of the

---

[10] According to the Wisconsin Supreme Court docket, it appears that oral argument has been scheduled for February 1, 2019.

FDCPA. The federal statute clearly affords a damages remedy for conduct that violates its proscriptions. 15 U.S.C. § 1692k(a). The FDCPA thus functions as a sword for aggrieved plaintiffs, whereas the Washington County court and *Kirsch* showed that the WCA's right-to-cure requirement is intended only as a shield.").

*Fourth*, for reasons just explained, the court and the parties will expend time preparing for, conducting and participating in trial, since the final outcome in *Kirsch* only has the potential of impacting one claim in this multi-claim action. The court is open to structuring the liability and damages verdict forms in such a way as to allow for the court to account for either outcome in *Kirsch*, but there are insufficient grounds, if any, to strike the January trial date and stay this case for six months or more pending a decision in *Kirsch*. Accordingly, the court will deny defendant Quorum's motion to stay.

ORDER

IT IS ORDERED that:

1) Defendant Quorum Federal Credit Union's motion to dismiss (dkt. #36) is DENIED.

2) Defendant Case Law Firm, S.C.'s motion for summary judgment (dkt. #20) is DENIED.

3) Defendant Quorum's motion to stay (dkt. #55) is DENIED.

Entered this 30th day of November, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge